IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

SHELBY D. EPPERLY, )
)
        Plaintiff, )
)
v. ) Civil Action No. 7:14-CV-00069
)
CAROLYN W. COLVIN, )
**Acting Commissioner of Social Security,** )
)
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff, Shelby D. Epperly ("Epperly"), challenges the decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–43. Specifically, Epperly alleges that the Administrative Law Judge ("ALJ") incorrectly weighed her treating physician's opinion and failed to fully develop the record by rejecting her request for a consultative examination. I conclude that substantial evidence supports the ALJ's decision as a whole. Accordingly, I **RECOMMEND DENYING** Epperly's Motion for Summary Judgment (Dkt. No. 17), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 14.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Epperly failed to demonstrate that she was disabled under

1

the Act.[1]  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Epperly protectively filed for DIB on March 3, 2011, claiming that her disability began on July 12, 2007.  R. 151-54.  Her date last insured was December 31, 2012.  R. 77.  The Commissioner denied Epperly's application at the initial and reconsideration levels of administrative review.  R. 77-86, 87-96.  On September 19, 2012, ALJ Anne V. Sprague held a hearing to consider Epperly's disability claim.  R. 35-76.  Epperly was represented by an attorney at the hearing, which included testimony from Epperly and vocational expert ("VE") John Newman.  Id.

On October 24, 2012, the ALJ entered her decision analyzing Epperly's claim under the familiar five-step process[2] and denying Epperly's claim for benefits.  R. 17-34.  The ALJ found

---

[1] The Act deems a person disabled for DIB purposes "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."
42 U.S.C. § 1382c(a)(3)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work.  Rather, a claimant must show that her impairments prevent him from engaging in all forms of substantial gainful employment given her age, education, and work experience.  See 42 U.S.C. § 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether he can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work

2

that Epperly suffered from the severe impairments of anxiety disorder and depression. R. 23. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 23-26. The ALJ further found that Epperly retained the RFC to perform a full range of work,[3] except she is "limited to 1 to 2 step job instructions and cannot do production pace work. She can complete goal oriented work tasks. She cannot work in crowds, but can have frequent contact with coworkers and the public." R. 26. The ALJ determined that Epperly could return to her past relevant work as a cleaner, and that Epperly also could work at jobs that exist in significant numbers in the national economy such as food preparation, stock clerk, and packer. R. 28-29. Thus, the ALJ concluded that Epperly was not disabled. R. 30. On December 18, 2013, the Appeals Council denied Epperly's request for review (R. 1–6), and this appeal followed.

## ANALYSIS

Epperly alleges that the ALJ improperly gave little weight to her treating physician's opinion and failed to fully develop the record by not ordering a consultative examination. These arguments lack merit and substantial evidence supports the AJL's decision.

### Treating Physician Opinion

Epperly claims that substantial evidence does not support the ALJ's decision because the ALJ erred by giving the opinion of her treating physician, Daniel Kelly, M.D., "little weight" when developing Epperly's RFC for her hands. Dr. Kelly completed a one-page medical source statement on September 27, 2012, finding that Epperly could "occasionally" use her thumbs for

---

experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[3] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by him and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id.

3

handling and fingering in a competitive work situation eight hours per day for five days per week. R. 453. Dr. Kelly did not provide any support for this finding within the statement.

A treating physician's opinion is not automatically entitled to controlling weight. The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. Id.; Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010). While the regulations require the ALJ to consider all of these factors, the ALJ is "not required to make a seriatim assessment as if it were a sequential evaluation." Vaughn v. Astrue, No. 4:11-cv-29, 2012 WL 1267996, at *5 (W.D. Va. Apr. 13, 2012).

There is substantial evidence in the record to support the ALJ's decision to give little weight to Dr. Kelly's assessment. R. 27-28. The ALJ noted Epperly's treatment relationship with Dr. Kelly and reviewed his general care treatment records. However, the ALJ found that Dr. Kelly's progress notes and objective findings did not support his opinion. Dr. Kelly's

4

records from Radford Family Medicine do not reference any treatment or discussion of Epperly's alleged continued thumb pain and maneuverability problems.  From July 2009 through July 2010, Dr. Kelly regularly met with Epperly for check-ups and treatment of a number of ailments, including spider bites, incontinence, sinusitis, renal stones, arm numbness, and anxiety.  R. 260-310.  These records do not acknowledge any thumb problems.  Dr. Kelly's medical records from March 2011 through September 2012 again do not reference thumb problems, but review Epperly's treatment for colds, moles, rib pain, leg pain, and bronchitis, and indicate her continued requests for medication for her mental health.  R. 356-442.  The court finds Epperly's argument unpersuasive that she would not discuss her thumb problems with Dr. Kelly because "she is no longer working in the job that caused her thumb issues to flare up" (Dkt. No. 18, p. 5); if Epperly faced regular thumb pain completing daily activities, presumably she would mention this to her doctor.  Moreover, Dr. Kelly's medical source statement is only a checkbox form; the Fourth Circuit has recognized checkbox forms have limited probative value.  See Leonard v. Astrue, No. 2:11cv00048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Such check-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician.").

The ALJ also determined that the remainder of Epperly's file, as well as her own allegations and daily activities, did not support Dr. Kelly's restrictive opinion.  Epperly underwent release of bilateral trigger thumbs approximately in 2000.  R. 314.  After developing pain at the surgical sites of the thumb and exhausting conservative treatment, Epperly again underwent release of the left trigger thumb in 2008.  R. 314-20.  During a post-operative appointment, Dr. Donnelly noted "I think she can resume normal use of the hand as symptoms

5

allow." R. 313. Following these surgeries, Epperly's medical record does not suggest she was unable to perform daily tasks due to her thumb problems. The only support for such thumb problems are Epperly's self-reports. At her hearing before the ALJ, Epperly stated that she could not pick items off of a tabletop due to her thumbs. R. 54. She stated that Dr. Kelly is the only doctor treating her thumbs, and that she has not returned to Dr. Donnelly for treatment since her surgery; although Epperly has considered returning for treatment with Dr. Donnelly, she tentatively claims to not have done so due to her finances. R. 50-51. Epperly incorrectly believes that Dr. Donnelly's paperwork includes the limitation of not using her thumbs, and states that they cause pain and "catch." R. 50-51. She did not list thumb-specific limitations in her April 16, 2011 Function Report, other than generally mentioning challenges using her hands. R. 208-15. Notably, Epperly did not list her thumb problems as a physical condition limiting her ability to work in her disability report. R. 183. Epperly's only cited supporting documentation are her past thumb surgeries–which she appears to have healed from, her medically unsupported testimony, and her function report that fails to mention thumb problems.

Although Dr. Kelly's opinion is uncontradicted by medical evidence, it also is unsupported by the remainder of the record. Dr. Kelly's medical source statement provides no reasoning as to why he thinks Epperly can only occasionally use her thumbs. R. 443. His treatment records, as well as the entirety of the administrative record, do not support such a finding. The ALJ recognized all of these issues in her opinion, and also noted Epperly did not allege a thumb problem on her initial application or allege difficulty performing personal care or daily chores. R. 27-28. Given the evidence set forth above, I find substantial support for the

6

ALJ's decision not to adopt the restrictive limitations set forth by Dr. Kelly and that Epperly is capable of a full range of work.[4]

## Duty to Develop the Record

Epperly claims that the ALJ failed to fully develop the record by rejecting her request for a mental consultative examination. She contends that because her treating mental health source, Shelly McIntyre, M.D., refused to complete a medical source statement, Epperly should have received a consultative examination. I find that the ALJ's decision was based on an adequately developed record and the ALJ did not need to order a consultation.

A consultative examination is generally obtained to resolve any conflicts or ambiguities within the record, as well as "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis or prognosis." 20 C.F.R. §§ 404.1519a(b), 416.919a(a). A consultative examination must be ordered when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). The ALJ has the discretion to determine when a consultative examination is necessary. 20 C.F.R. §§ 404.1519a(a), 416.919a(a).

In this case, the ALJ was within her discretion not to order a consultative examination with regard to Epperly's mental impairment. The ALJ reasoned, "[t]he claimant has the opportunity for mental health treatment and treatment is readily available. Much of the time, the claimant has chosen not to consistently pursue mental health treatment. Progress notes from treating mental health and medical professionals, including Dr. McIntyre, a psychiatrist, provide

---

[4] Epperly also briefly contends that the vocational expert's hypothetical did not fairly set out her RFC because the ALJ did not ask about her hand/thumb limitations. However, an ALJ is not required to ask the vocational expert about nonsevere impairments that do not cause a functional limitation. See, e.g., Thompson v. Astrue, 442 F. App'x 804, 806 (4th Cir. 2011); Mills v. Astrue, No. CA 2:10-1657-CMC, 2011 WL 3840989, at *2 (D.S.C. Aug. 26, 2011). The ALJ's hypothetical question to the vocational expert fully and fairly incorporated all of the limitations set forth in the ALJ's denial decision. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).

7

a longitudinal assessment of her mental functional limitations from 2011 through September 2012." R. 28. Given the mental health evidence in the record generally was in agreement, the ALJ did not need a consultative examination because she had sufficient evidence to review and no conflicts to resolve. The record establishes that Epperly has received relatively conservative mental health treatment. Although Epperly was hospitalized in November 2008 (R. 332-37) and November 2009 (R. 350-53) for anxiety and depression, and admits to suicide attempts (R. 346), her treatment records from New River Valley Community Services in 2010 include normal mental status examinations with descriptions of mental stability despite diagnoses of depression and post-traumatic stress disorder (PTSD). R. 243-57 (discharging her from treatment in October 2010 for noncompliance). Dr. McIntrye's records from June 2011 through August 2012 suggest that Epperly generally managed her depression with medication, did not suffer from suicidal or homicidal ideations, and had normal mental status examinations. R. 321-29. Dr. Kelly's treatment records from July 2009 through September 2012 only mention occasional symptoms of anxiety and frequent requests for medication related to her mental health. R. 260-442. The medical records as a whole implied that Epperly can manage her daily affairs with treatment.

Epperly's testimony also did not signal a gap in the evidence and a need for a consultative examination. Although Epperly reported "real bad anxiety attacks" that cause difficulty being around people (R. 52-53), and depression and anxiety that cause forgetfulness and flashbacks affecting her ability to concentrate (R. 54-55), she also stated she can clean, grocery shop, go to church, and feed her dogs. R. 56, 208-09. Nothing in the record points to a need for a consultative opinion to assess whether Epperly's mental impairments impact her ability to function; a consultative examination would have been superfluous. The ALJ had

sufficient information to support a decision and was not required to order a consultative examination.

It is true that the ALJ has a duty to develop the record. See Cook v. Heckler, 783 F.2d 1168, 1173–74 (4th Cir. 1986) ("[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate.") (citations omitted). The failure of the ALJ "to ask further questions and to demand the production of further evidence, as permitted by 20 C.F.R. § 404.944" may amount to neglect of this duty. Id. This duty is discharged, however, so long as "the record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000); Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009) (citing Cook, 783 F.2d at 1173); cf. Parker v. Astrue, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011). Further, this duty does not transform the ALJ into claimant's counsel and the ALJ "has the right to assume that counsel is presenting the claimant's strongest case for benefits." Blankenship v. Astrue, 2012 WL 259952, at *13 (S.D.W. Va. Jan. 27, 2012) (citations omitted). "The regulations require only that the medical evidence be 'complete' enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity." Kersey, 614 F. Supp. 2d at 693-94 (citing 20 C.F.R. §§ 404.1513(e) and 416.913(e)). Therefore, the inquiry in determining "whether the record is adequate to support a judicious administrative decision" centers on whether there are "evidentiary gaps" that prejudice the rights of the claimant. Blankenship, 2012 WL 259952, at *13 (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)).

9

The evidence before the ALJ was adequate to determine that Epperly's mental impairments did not render her disabled. The ALJ considered all of the evidence presented by Epperly and her counsel, including function reports, Dr. McIntyre's mental health records, and her inpatient treatment records from St. Albans. The ALJ also reviewed and gave "some weight" to the opinions of the state agency psychological experts, Julie Jennings, Ph.D. and Jeannie Buyck, Ph.D. R. 28. Both Dr. Jennings and Dr. Buyck found that Epperly faced few limitations and only moderate ones at worst, which were accounted for in the RFC. R. 81-83, 91-93. Upon review of these records and opinions, the ALJ noted complaints of PTSD, depression, and anxiety. R. 23-28. However, the record does not demonstrate that Epperly's mental impairments functionally limited her ability to work more than what was provided for in her RFC.

Furthermore, Epperly "has not identified material evidence that was missing at the hearing and has not presented new material evidence that should be considered." Clark v. Astrue, 2011 WL 3611326, at *3 (W.D. Va. Aug. 17, 2011). Epperly only contends that the state agency experts did not have an opportunity to review her "post alleged onset date mental health treatment records" (Dkt. No. 18, p. 7); their reviews occurred in May and August 2011, while the record includes additional mental health records extending to at least the date of last insured. Epperly points to records showing complaints of depression, anxiety attacks, sleeping difficulties, and GAF scores of 35 to 40. Dkt. No. 18, p. 7 (citing R. 321-29). The records Epperly generally refers to are from her regular treatment with Dr. McIntyre from 2011 and 2012. However, Dr. McIntrye offered conservative treatment for Epperly's mental impairments. R. 321-29. In August 2012, Dr. McIntrye even noted Epperly "fills out that she has PTSD but it is not an ongoing complaint at the time of interview." R. 324. These additional records could have provided further support for the state agency experts' opinions, as they do not appear to

substantively differ from those already offered by New River Valley Community Services in 2010 (R. 243-57) and in fact suggest an overall improvement in comparison to her prior inpatient treatment at St. Albans.  Compare R. 350-52 (inpatient treatment records showing a GAF score as low as 20), with R. 321-29 (Dr. McIntrye's records noting the medications were helping).  As Dr. McIntrye's evidence does not necessarily change the trend of Epperly's mental health records, I find that the ALJ was not derelict in her duty to develop the record as to Epperly's mental impairments.

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Epperly's claim for benefits and in determining that her impairments would not significantly limit her physical or mental ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Epperly's motion for summary judgment be **DENIED**.

The Clerk is directed to transmit the record in this case to Glen E. Conrad, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as

well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

                                    Enter: August 10, 2015

                                    *Robert S. Ballou*

                                    Robert S. Ballou
                                    United States Magistrate Judge